UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER LYNN CARRIKER,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 2:21-cv-00671-NJK<br><br>**ORDER**<br><br>[Docket Nos. 17, 19] |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 17. The Commissioner filed a response in opposition and a cross-motion to affirm. Docket No. 19. No reply was filed. *See* Docket.

The parties consent to resolution of this matter by the undersigned magistrate judge. *See* Docket No. 3; *see also Gen. Order* 2019-08.

**I.  BACKGROUND**

    A.    <u>PROCEDURAL HISTORY</u>

On December 18, 2017, Plaintiff filed an application for disability insurance benefits with an onset date of September 30, 2017. *See, e.g.,* Administrative Record ("A.R.") 223-24. On August 3, 2018, Plaintiff's claims were initially denied. A.R. 131-34. On December 19, 2018, Plaintiff's claims were denied on reconsideration. A.R. 142-48. On February 14, 2019, Plaintiff filed a request for a hearing before an administrative law judge. A.R. 149-50. On May 6, 2020, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ John Cusker. *See* A.R. 41-76. On September 17, 2020, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 18-30. On

February 22, 2021, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 1-6.

On April 22, 2021, Plaintiff commenced this action for judicial review. Docket No. 1.

B. THE DECISION BELOW

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 A.R. 18-30. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2020, and has not engaged in substantial gainful activity since the alleged onset date. A.R. 20. At step two, the ALJ found that Plaintiff has the following severe impairments: vascular insult to the brain, spine disorders, dysfunction – major joints, disorders of the back - discogenic and degenerative, carpal tunnel syndrome, depressive bipolar and related disorders, and anxiety and obsessive-compulsive disorders. A.R. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 21-23. The ALJ found that Plaintiff has the residual functional capacity to

> perform a range of light work as defined in 20 CFR 404.1567(b): She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and/or walk for about 6 hours each in an 8 hour workday, with normal breaks. She cannot climb ladders, ropes and/or scaffolds, or balance; she can occasionally climb ramps and/or stairs, stoop, kneel crouch, and crawl. She can occasionally handle, finger, and feel with both hands. She must avoid exposure to heavy machinery, unprotected heights and commercial driving, and avoid concentrated extreme cold and extreme heat. She can perform simple, and some detailed tasks in a well-spaced work setting.

A.R. 23-24. *See also* A.R. 24-28. At step four, the ALJ found Plaintiff is unable to perform past relevant work as a risk insurance manager and administrative analyst. A.R. 28. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. A.R. 28-30. In doing so, the ALJ defined Plaintiff as a younger individual aged 18-49 at the time of the alleged disability onset date, and as having at least a high school education. A.R. 28. The ALJ found the

transferability of job skills to be immaterial. A.R. 28. The ALJ considered the Medical-Vocational Rules, which provide a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a furniture rental clerk, dealer accounts investigator, and laminating machine off bearer. A.R. 28-30.

Based on all of these findings, the ALJ found Plaintiff not disabled through the date of the decision. A.R. 30.

## II.     MERITS ARGUMENT

This case involves two overarching issues: (1) whether remand is required in light of constitutional concerns regarding the tenure of former Commissioner Andrew Saul and (2) whether the ALJ erred by denying benefits without substantial evidence to support his determination of Plaintiff's mental residual functioning capacity. The Court will address the latter merits contention first. *Cf. United States v. Raines*, 362 U.S. 17, 22 (1960) (addressing preference against "unnecessary pronouncements on constitutional issues").

### A.     STANDARDS

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). The disability determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). When an individual is pursuing a claim under Title II, the claimant must also meet insurance requirements. 20 C.F.R. § 404.130. The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits.  42 U.S.C. § 405(g).  The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*

B.   ANALYSIS

Plaintiff raises a single merits issue on appeal.  Plaintiff submits that the ALJ did not incorporate Dr. Short's opinions about Plaintiff's moderate limitations in interacting with others properly into the mental residual functional capacity determination.  Docket No. 17 at 10-12.  Plaintiff submits that the mental residual functional capacity determination does not adequately encompass this moderate limitation, which would impede her ability to carry out the alternative jobs highlighted by the ALJ's Medical-Vocational Rules analysis.  *Id.* at 11-12.  In response, the Commissioner submits that the ALJ properly considered this opined limitation, which is not a clear functional limitation, and appropriately included it in the residual functional capacity by incorporating it into a limitation as "simple and some detailed tasks in a well-spaced work setting."  Docket No. 19 at 13-21.  The Commissioner has the better argument.

The residual functional capacity is what an individual can do despite her "physical, mental, nonexertional, or other limitations."  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989)

4

(citing 20 C.F.R. § 404.1545). In making this determination, the ALJ considers all relevant evidence, including residual functional capacity determinations made by consultative examiners, agency experts, and other doctors. *See* 20 C.F.R. §§ 404.1513(c), 404.1545(a)(3), 416.913(c), 416.945(a)(3). The residual functional capacity determination does not need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended* 807 F.3d 996, 1006 (9th Cir. 2015).

The ALJ must give sufficient weight to "subjective aspects of a doctor's opinion." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) and *Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir. 1985)). A doctor's ultimate conclusion on limitations can be disregarded if the ALJ sets forth specific and legitimate reasons for doing so, supported by substantial evidence." *See Revels v. Berryhill*, 874 F.3d 648, 654-55 (9th Cir. 2017) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). If a physician's opinion is "premised to a large extent upon the claimant's own account of [her] symptoms and limitations," it may be disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433-34 (9th Cir. 1988)). If a claimant can spend a substantial part of her day performing functions that are transferable to a work setting, "a specific finding as to this fact may be sufficient to discredit an allegation" of a disabling limitation. *Id.* at 603.

Plaintiff has failed to demonstrate that she is entitled to a remand based on the failure of the ALJ to properly consider and weigh Dr. Short's conclusions and opinions. Plaintiff faults the ALJ for recognizing Dr. Short's perspective, but not giving weight to his opinion that Plaintiff would have moderate difficulty interacting with supervisors, peers, and the public. *See* Docket No. 17 at 11. Plaintiff's briefing, however, merely makes a bare assertion that the ALJ should have incorporated Dr. Short's opinion into the mental residual functional capacity determination. *Id.* at 10-12. She fails to develop her argument undermining the ALJ's decision making process

or point to contrary evidence in the record supporting a different conclusion from the available record. *See id.* Nonetheless, Plaintiff's argument is belied by the record.

The Commissioner argues that Dr. Short's limitation and opinions were properly incorporated into the mental residual functional capacity determination. Docket No. 19 at 18-19. The Commissioner further argues that Dr. Short's limitations were interpreted by the agency consultants in their residual functional capacity recommendations and the ALJ specifically adopted those recommendations of including the limitation of "simple, and some detailed tasks in a well-spaced work setting" after finding that the limitation was supported by the record and properly explaining why more restrictive residual functional capacity was not imposed. *Id.* at 19-21.

The Court finds that, in his determination of Plaintiff's mental residual functional capacity, the ALJ explicitly considered Dr. Short's opinion and gave it weight. A.R. 26-27. He discussed at length Dr. Short's assessment, including his consideration of Plaintiff's history as reported by her in his evaluation of her. A.R. 22, 26-27. The ALJ also considered and gave weight to the opinions of two state agency consultants, Dr. Kotler and Dr. Dr. Patterson. A.R. 27-28. Both Dr. Kotler and Dr. Patterson incorporated Dr. Short's opinions and examination into their recommendations and conclusions. A.R. 96, 100, 104, 112-13, 119, 121, 123, 127. The ALJ discounted the severity of the mental limitations by specifically considering the daily activities Plaintiff reported being able participate in, including social activities, and the treatment notes submitted as evidence describing Plaintiff as "pleasant" and "cooperative". A.R. 23-28. In considering all these opinions and the available record, the ALJ determined that Plaintiff had only a mild limitation in interacting with others and accordingly limited the mental residual functional capacity to "simple and some detailed tasks in a well-spaced work setting." A.R. 24.

The Court finds that the ALJ thoughtfully considered not only the expert opinions and limitations submitted from Drs. Short, Kotler, and Patterson, but also weighed them alongside the available evidence, including Plaintiff's testimony and her treatment records. A.R 21-28. Plaintiff's treatment records consistently report her as being pleasant and cooperative. *See, e.g,* A.R. 361, 550, 572, 911, 1618, 1628, 2243. While Plaintiff did report some anxiety and depression impacting her ability to interact with others, the records, including Dr. Short's assessment,

6

indicated that these conditions are manageable when Plaintiff is compliant with her medication. *See, e.g.,* A.R. 899, 902, 904. The record also shows a range of daily activities, including going to public places both alone and with others, playing games with her family, and interacting with people on the Internet or phone, which cuts against a finding of a more severe mental residual functional capacity. A.R. 61-62, 65, 121, 287, 289-90, 902. The Court finds that the ALJ properly weighed the contrary evidence against the moderate limitation opined by Dr. Short and Plaintiff's asserted limitations in interacting with others when determining Plaintiff's mental residual functional capacity. Further, the Court finds that the ALJ's determination of Plaintiff's mental residual functional capacity is supported by substantial evidence.

Accordingly, Plaintiff is not entitled to a remand based on her merits-based argument.

## III.    CONSTITUTIONAL ARGUMENT

Having determined that remand is not warranted based on the merits-based argument presented, the Court turns to Plaintiff's constitutional challenge.[1] Plaintiff argues that she is entitled to relief on appeal because the tenure of the Commissioner of Social Security heading the agency at the time of her denial of benefits was unconstitutional in that he could not be removed by the President without cause. Docket No. 17 at 6-10.[2] The Commissioner counters that,

---

[1] The Court notes at the outset a procedural defect in that Plaintiff did not plead a constitutional violation in her complaint filed with this Court. *See* Docket No. 1-1. Pursuant to the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Montoya v. Colvin*, No. 2:16-cv-00454-RFB-NJK, 2016 WL 890922, at *1-3 (D. Nev. Mar. 8, 2016) (applying Rule 8 in the Social Security context). Moreover, that an unpled claim is later presented through argument in substantive briefing is insufficient to preserve the claim. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). Hence, it appears Plaintiff waived her constitutional argument by not pleading it. *See, e.g.*, *John R. v. Comm'r of Soc. Sec.*, No. C20-6176-MLP, 2021 WL 5356719, at *5 (W.D. Wash. Nov. 16, 2021). As the Commissioner did not raise this waiver issue, however, the Court will address the constitutional argument on its merits.

[2] This is one of several constitutional issues that has been percolating within the administrative law realm in recent years, adding importance to being clear as to what Plaintiff is *not* arguing. Most significantly, Plaintiff is not arguing that the ALJ was improperly appointed by then-Acting Commissioner Berryhill. *See* Docket No. 17 at 6-10. As such, this case does not involve an appointments challenge like those raised in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) or *Carr v. Saul*, 141 S.Ct. 1352 (2021). This distinction is of particular importance because an appointment violation is remedied with a new hearing before a properly appointed official. *Lucia*, 138 S.Ct. at 2055. For the reasons discussed below, relief is not provided as a matter of course with respect to the "tenure" issue that Plaintiff is relying upon in this case. *See Collins v. Yellen*, ___ U.S. ____, 141 S.Ct. 1761, 1788 (2021) (distinguishing *Lucia*).

regardless of whether the tenure of the previous Commissioner was unconstitutional, Plaintiff has not established a sufficient nexus between the constitutional infirmity and her denial of benefits to warrant relief. Docket No. 19 at 9-11. The Court agrees with the Commissioner.

### A. CONSTITUTIONAL VIOLATION

The Social Security Independence and Program Improvements Act of 1994 provides that the Social Security Administration is a component within the United States Department of Health and Human Services that will act as an "independent agency in the executive branch of the Government." 42 U.S.C. § 901(a). The Act provides further that the Commissioner is "appointed for a term of 6 years" and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). The Supreme Court has held in other contexts that similar tenure protections violate separation of powers principles and, consequently, are unconstitutional. *See Collins*, 141 S.Ct. at 1783-87 (holding that the tenure protection at the Federal Housing Finance Agency is unconstitutional); *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, ___ U.S. ___, 140 S.Ct. 2183, 2197-2207 (2020) (same for Consumer Financial Protection Bureau). The current Commissioner concedes that the tenure protection specific to the Social Security Administration is likewise unconstitutional, *see* Docket No. 19 at 6; *see also Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (O.L.C. July 8, 2021), and other courts have reached the same conclusion, *see, e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021).

### B. ENTITLEMENT TO RELIEF

That the protected tenure provision violates constitutional separation-of-powers principles does not end the analysis, however. In addition to determining that a protected tenure position is constitutionally defective, the Supreme Court made clear that such a provision is severable from the other governing statutes for the agency. *Seila Law*, 140 S.Ct. at 2209, 2245.[3] That a party was

---

[3] Although the Supreme Court has not specifically addressed severability in the Social Security context, other courts have determined that the pertinent removal clause is similarly severable. *Shaun A. v. Comm'r of Soc. Sec.*, No. C21-5003-SKV, 2021 WL 5446878, at *4 (W.D.

somehow impacted by an action or decision of an agency that suffers from this type of "tenure" violation does not mean that the action or decision was void or that the party is entitled to judicial relief. *See Collins*, 141 S.Ct. at 1788. To create an entitlement to relief, the claimant must show that the "unconstitutional provision [] inflict[ed] compensable harm." *Id.* at 1788. Hence, the aggrieved party must establish a "link" between the adverse action and the unconstitutional tenure-protection provision. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021); *see also Collins*, 141 S.Ct. at 1788-89 (providing example of infliction of compensable harm).

Social Security claimants appealing a denial of benefits face an uphill battle in trying to establish the necessary link to obtain relief based on the unconstitutional removal provision. As explained by Justice Kagan, this constitutional violation is unlikely to lead to relief in the lion's share of social security appeals because, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference." *Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring). The nature of appellate review in the social security context provides a further hurdle for claimants raising this argument:

> Even assuming § 902(a)(3)'s removal clause prevented former President Trump from removing Commissioner Saul and confirming a different Commissioner, there is no possibility § 902(a)(3) harmed plaintiff, because the final decision of the Commissioner that is before this Court for review is the ALJ's decision.... [T]he Court has reviewed the record and the ALJ's decision at issue and concludes that the ALJ did not err, and that the case should be affirmed for these reasons. Had the Court found otherwise and determined that the ALJ's decision was not supported by substantial evidence or free of legal error, the Court would have reversed the Commissioner's final decision. Hence, the Court reaches its decision to reverse or affirm the Commissioner's final decision notwithstanding the existence of § 902(a)(3)'s removal clause, who the Commissioner was at the time the decision became final, or what directives the Commissioner may have given the ALJ. The Court thus concludes that there is no possibility § 902(a)(3)'s removal clause harmed plaintiff in this case.

*Sarah H. v. Comm'r of Soc. Sec.*, No. 3:21-cv-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021); *see also Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("Plaintiff has not shown that whether the President could remove the

---

Wash. Nov. 22, 2021) ("if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional"). The Court agrees.

9

SSA Commissioner without limitations . . . impacted the independence of the ALJ or his decision in Plaintiff's case. It is well settled that the ALJ must exercise his independent judgment on the evidence before him" (internal quotations and citations omitted)). As Justice Kagan predicted in her concurrence, relief is routinely denied to social security appellants raising this argument within the Ninth Circuit. *See, e.g.*, *Sarah H.*, 2021 WL 5770269, at *5; *Frank W. v. Kijakazi*, No. 20cv1439-KSC, 2021 WL 5505883, at *4 (S.D. Cal. Nov. 24, 2021); *Rivera-Herrera v. Kijakazi*, No. 1:20-cv-01326-GSA, 2021 WL 5450230, at *7-8 (E.D. Cal. Nov. 22, 2021); *Shaun A.*, 2021 WL 5446878, at *5; *Shannon R. v. Comm'r of Soc. Sec.*, No. C21-5173-MLP, 2021 WL 5371394, at *9 (W.D. Wash. Nov. 18, 2021); *John R.*, 2021 WL 5356719, at *8; *Lisa Y.*, 2021 WL 5177363, at *6-8; *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00434-BR, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021); *Jesus V.O. v. Kijakazi*, No. 2:20-cv-05536 (VEB), 2021 WL 550528, at *6 (C.D. Cal. Oct. 18, 2021); *Jon E.C. v. Kijakazi*, No. EDCV 20-01257 PVC, 2021 U.S. Dist. Lexis 197598, at *1 n.3 (C.D. Cal. Oct. 13, 2021); *Brinkman*, 2021 WL 4462897, at *2; *Robles v. Comm'r of Soc. Sec.*, No. 2:20-cv-01069-JDP (SS), 2021 WL 4285170, at *4 n.6 (E.D. Cal. Sept. 21, 2021).

      Justice Kagan proved prescient for purposes of this case, too. Plaintiff has not identified any link between the ALJ's adverse decision and the unconstitutional removal provision. Plaintiff instead conflates the Supreme Court's jurisprudence as to unconstitutional tenure protection with its jurisprudence as to unconstitutional appointments. *See* Docket No. 17 at 9 (citing *Lucia*, 138 S.Ct. at 2055). The Supreme Court has made clear that the mere existence of unconstitutional tenure protection is not grounds for relief and, in so doing, explicitly distinguished the case law on which Plaintiff now relies for her contrary position. *Collins*, 141 S.Ct. at 1788 (distinguishing *Lucia*). Moreover, Plaintiff has not put forward any showing at all that former President Trump would have removed Commissioner Saul and appointed a new Commissioner who would have administered this Plaintiff's claims any differently. *See Sarah H.*, 2021 WL 5770269, at *5.

      Accordingly, Plaintiff has not shown an entitlement to relief arising out of the unconstitutionality of the Social Security Commissioner's tenure-protection provision. *See also Brand v. Kijakazi*,__F.Supp.3d.__, 2021 WL 5868131, at *4-7 (D. Nev. 2021)

## IV. CONCLUSION

Based on the forgoing, the Court **DENIES** the motion for reversal or remand (Docket No. 17) and **GRANTS** the countermotion to affirm (Docket No. 19). The decision below is **AFFIRMED**. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: January 24, 2022

_____
Nancy J. Koppe
United States Magistrate Judge